IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JENNIFER LYNN ASHTON,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-2069

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PRINCIPLES OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        A.    Ashton's Education and Employment Background  . . . . . . . . . . . . 4
        B.    Administrative Hearing Testimony  . . . . . . . . . . . . . . . . . . . . 5
              1.    Ashton's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 5
              2.    Vocational Expert's Testimony  . . . . . . . . . . . . . . . . . . 6
        C.    Ashton's Medical History  . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      CONCLUSIONS OF LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        A.    ALJ's Disability Determination  . . . . . . . . . . . . . . . . . . . . . 10
        B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 12
              1.    The Opinions of Dr. Zdilar and Dr. Piburn  . . . . . . . . . . . 13
              2.    Credibility Determination  . . . . . . . . . . . . . . . . . . . . 18
              3.    Hypothetical Question  . . . . . . . . . . . . . . . . . . . . . . 21

VI.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.    ORDER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jennifer Lynn Ashton on September 30, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Ashton asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Ashton requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On September 30, 2013, Ashton filed this action for judicial review. The Commissioner filed an Answer on December 2, 2013. On December 31, 2013, Ashton filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On February 28, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 10, 2014, Ashton filed a reply brief. On November 8, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to:

"[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

3

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Ashton's Education and Employment Background

Ashton was born in 1975. She did not finish high school, but later earned a GED. At the administrative hearing, Ashton testified that she tried to attend community college on two separate occasions, but both times she "failed miserably." Over the past 15 years, Ashton has worked on an assembly line at a cabinet making business, and stocking shelves at Hy-Vee and Dollar General. She also worked for short periods of time at a Burger King, laundry service, and movie theater.

## B. *Administrative Hearing Testimony*

### 1. *Ashton's Testimony*

At the administrative hearing, both the ALJ and Ashton's attorney inquired of Ashton the reasons she stopped working at various jobs prior to 2008. Generally, Ashton responded that as employers gave her more tasks, the jobs became too overwhelming for her. She stated that she was unable to keep up with her required tasks or remember how to properly perform all of her assigned tasks.

Next, Ashton's attorney engaged with Ashton about her alleged impairments and signs and symptoms relating to her impairments. For example, Ashton described a panic attack: "I start getting chest pains. . . . I just -- my chest feels real heavy . . . kind of feels like a heart attack because your chest gets really heavy. I have trouble breathing. I get headaches, massive migraines."[1] According to Ashton, she gets panic attacks once a week, with headaches lasting for a couple of hours. Ashton also discussed having difficulties with concentration. She stated that she gets confused easily. Ashton further identified problems with social isolation, and not wanting to be around groups of people for extended periods of time. Lastly, Ashton testified that she had difficulty with impulse control. She stated that "I tend to [be impulsive] from time to time, because just -- it's something that I want to do and I'll just, kind of do it just because it's there and I wanted to do it."[2]

Ashton's attorney also asked Ashton her opinion on her ability to work:

> Q: Do you think you're able to work?
> A: I'm going to answer no. Not a full time job. I think a full time job would be too much.
> Q: And why would that be?

---

[1] Administrative Record at 46.

[2] Administrative Record at 49.

A:    It'd be too much because it would take up a lot of my time, and I just think it would be too stressful trying to work around a lot of people. And then going home and then trying to take care of my household things. I even have trouble with my household things. There's weeks where I don't, you know get my house clean because I'm so depressed and all I want to do is sit on the couch and do absolutely nothing because I'm so depressed.

Q:    So you don't think you could work more than a part time job, is that right? Or do you think you could do that?

A:    I don't think I could do that either, because there's days and there's weeks where I'll be depressed. Like for instance it was about a month or so ago I just felt like I was so depressed when I take my daughter to school instead of doing housework around the house I'd lay on the couch and do absolutely nothing. And I just -- I felt like I didn't want to get off the couch and I just didn't want to do anything, because I was so depressed.

(Administrative Record at 50-51.)

## 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual with:

> no exertional limits at all but has some non-exertional. Mainly that this worker is limited to performing only the most simple, routine, and repetitive types of work. This is work that doesn't require any close attention to detail, work that doesn't require the use of any independent judgment on the job, and this is so because the work is so unchanging overtime there's no new circumstances that the worker needs to judge or respond to. It's pretty much the same thing time after time. And then finally I want you to assume this worker requires an occupation where she's able to perform all of the job duties that would be assigned to her without having any contact with the general public at all.

6

(Administrative Record at 58-59.) Additionally, the ALJ found that Ashton has no past relevant work. Thus, the vocational expert testified that under such limitations, Ashton could perform the following jobs: (1) kitchen helper (3,000 positions in Iowa and 300,000 positions in the nation), (2) cook helper (2,000 positions in Iowa and 230,000 positions in the nation), and (3) laundry worker (500 positions in Iowa and 42,900 positions in the nation).

### C. Ashton's Medical History

On November 10, 2009, Jennifer Schneiderman, LISW, provided Disability Determination Services ("DDS") with a letter describing Ashton's functional limitations. Schneiderman reported that she treated Ashton in counseling sessions 14 times between September 2008 and September 2009. According to Schneiderman, Ashton's primary diagnoses are anxiety and depression. Specifically, Schneiderman noted that Ashton gets "anxious and irritable in dealing with people. She does not cope well with change and is overwhelmed easily."[3] Schneiderman also noted that Ashton "does not always cooperate due to mood swings."[4] Schneiderman found, however, that Ashton has the ability to remember and understand instructions. Schneiderman concluded that Ashton "has not made great progress due to her ongoing low frustration tolerance."[5]

On December 31, 2009, Ashton met with Dr. Darko Zdilar, M.D., Ph.D., for a psychiatric evaluation. Dr. Zdilar noted that Ashton suffers from mood problems, anxiety, and ADHD. Specifically, Dr. Zdilar found that Ashton's mood problems are primarily caused by depression and stress. Symptoms for her anxiety problems include panic attacks, minor issues of OCD, and minor episodes of PTSD. Dr. Zdilar diagnosed Ashton

---

[3] Administrative Record at 485.

[4] Id.

[5] Id.

with depressive disorder and possible ADHD. Dr. Zdilar recommended medication as treatment.

On February 9, 2010, Dr. Scott Shafer, Ph.D., reviewed Ashton's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Ashton. On the Psychiatric Review Technique assessment, Dr. Shafer diagnosed Ashton with depressive disorder. Dr. Shafer determined that Ashton had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Shafer determined that Ashton was moderately limited in her ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Shafer concluded that:

> [Ashton] was able to complete two years of college and perform employment in the past. Her therapist indicates some limitations in interacting with others and coping with change, but not at a level that would preclude employment. [Activities of daily living] indicate [Ashton] can provide care for her children and handle her daily responsibilities. [She] retains the ability to understand, remember, and follow instructions. Her attention, concentration, and pace may vary. She can interact appropriately with the public, coworkers, and supervisors on at least a limited basis. Her judgment is adequate to adjust to changes in the workplace with some added support.

(Administrative Record at 522.)

On March 22, 2011, Dr. Zdilar filed a report outlining Ashton's mental health difficulties. Dr. Zdilar diagnosed Ashton with depressive disorder and ADHD. Dr. Zdilar

found that Ashton "may struggle to remember many complex directives given at once, but has the ability to follow through on simple two step directions."[6] Dr. Zdilar also found that Ashton was moderately limited in the ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Dr. Zdilar noted that Ashton "can become easily frustrated and may need a break to utilize coping skills under significant pressure, but could manage, using these skills for no more than four hours per day to begin with."[7] Dr. Zdilar opined that "[i]t would be in [Ashton's] best interest to obtain and manage part-time work first, progressing to possible full-time employment with support. With her history at the present time, she would not be able to manage [a] full-time job consistently."[8]

On January 12, 2012, at the request of Ashton's attorney, Dr. Marvin F. Piburn, Jr., M.D., a treating psychiatrist, filled out "Mental Impairment Interrogatories" for Ashton. Dr. Piburn diagnosed Ashton with bipolar disorder, anxiety, impulse control disorder, and ADHD. Dr. Piburn found that Ashton's signs and symptoms consisted of poor memory, sleep disturbance, mood disturbance, recurrent panic attacks, feelings of guilt and worthlessness, difficulty thinking and concentrating, social withdrawal and isolation, decreased energy, and generalized persistent anxiety. Dr. Piburn opined that Ashton had not had much response to treatment due to the chronic nature of her mental illness. Dr. Piburn estimated that Ashton would miss three or more days of work per

---

[6] Administrative Record at 570.

[7] *Id.*

[8] *Id.* at 571.

month due to her impairments or treatment for her impairments. Dr. Piburn determined that Ashton has marked difficulties in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday or workweek, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Piburn concluded Ashton had the following limitations: marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace. On March 13, 2013, Dr. Piburn provided Ashton's attorney with a letter stating "I have reviewed the mental impairment interrogatory that was completed on January 12, 2012 and I see no improvements in Ms. Ashton's mental health since that time."[9]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Ashton is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

---

[9] Administrative Record at 630.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.

2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Ashton had not engaged in substantial gainful activity since September 25, 2009. At the second step, the ALJ concluded from the medical evidence that Ashton has the following severe impairments: mood disorder, personality disorder, and anxiety disorder. At the third step, the ALJ found that Ashton did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Ashton's RFC as follows:

> [Ashton] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine and repetitive work. She cannot pay close attention to detail or use independent judgment on the job. She requires an[] unchanging and repetitive environment and job tasks that do not require the use of judgment. She requires a job where she is able to perform duties without contact with the public. She cannot work at a regimented pace where her tasks must be coordinated with others or completed under rigid time constraints.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Ashton had no past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Ashton could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Ashton was not disabled.

## B. Objections Raised By Claimant

Ashton argues that the ALJ erred in three respects. First, Ashton argues that the ALJ failed to properly consider the opinions of her treating psychiatrists, Dr. Zdilar and Dr. Piburn. Second, Ashton argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Ashton argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. The Opinions of Dr. Zdilar and Dr. Piburn

Ashton argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrists, Drs. Zdilar and Piburn. Specifically, Ashton argues that the ALJ failed to properly weigh Dr. Zdilar's and Dr. Piburn's opinions. Ashton also argues that the ALJ's reasons for discounting both doctors' opinions are not supported by substantial evidence in the record. Ashton concludes that this matter should be remanded for further consideration of Dr. Zdilar's and Dr. Piburn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir.

13

2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ thoroughly addressed the opinions of Dr. Zdilar. For example, the ALJ noted that Dr. Zdilar assigned a GAF score of 50 to 60, indicating moderate symptoms, to Ashton. The ALJ also noted that in October 2010, Dr. Zdilar

14

found Ashton to have "good judgment, no suicidal ideation, attention and concentration was fair and memory was good."[10] At that time, Dr. Zdilar again assigned a GAF score of 60 to Ashton. The ALJ also thoroughly discussed and reviewed the medical source statement that Dr. Zdilar provided to Ashton's attorney.[11] In reviewing the medical source statement, the ALJ weighed Dr. Zdilar's opinions as follows:

> The undersigned accords little weight to the opinion that [Dr. Zdilar] concludes [Ashton] could only work part time. He did not provide any factual basis for that conclusion. The record does not indicate limitations on concentration and social interaction that would limit her to working fewer than eight hours a day.

> Additionally, the opinion that [Ashton] "would not be able to manage full time job consistently" is reserved for the commissioner. It is not an opinion regarding specific and observable functional limits. Therefore, there is no means of assessing its accuracy or whether it is supported by other substantial evidence in the record.

(Administrative Record at 18.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Zdilar. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Zdilar's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

---

[10] Administrative Record at 18.

[11] *See id.*

Turning to Dr. Piburn's opinions, the Court, again, finds that the ALJ thoroughly addressed and considered the opinions of Dr. Piburn.[12] In reviewing Dr. Piburn's opinions, the ALJ determined that:

> The undersigned notes that Dr. Piburn has provided an opinion in that [Ashton's] mental pathology meets a listing level of severity. The undersigned has carefully reviewed the opinion of Dr. Piburn and finds the opinion unpersuasive. He indicates that [Ashton's] highest global assessment of functioning score in the last year is 50 but this is clearly erroneous. It is inconsistent and at odds with the record and his own outpatient treatment records. For example, in June 2011, [Ashton] had a global assessment of functioning of 55/55. In July 2011 he GAF assessment ranged between 55 and 62; was 58 in August 2011; between 50 and 58 in September and October 2011 and January 2012. These scores are clearly inconsistent with his statement of [Ashton's] mental capacity would meet a listing level of severity. . . .

> The undersigned gives minimal weight to the additional opinion provided in March 2013, in that Dr. Piburn had only seen [Ashton] in November 2012 and January 2013, and no other visits were found within those 14 months.[13]

---

[12] *See* Administrative Record at 18-19 (providing thorough and detailed discussion of Dr. Piburn's treatment notes, medical source statement, and letter affirming his medical source statement).

[13] Ashton points out that in addition to the two occasions the ALJ mentions in his decision that Dr. Piburn met with Ashton (November 2012 and January 2013), Dr. Piburn also met with her on two additional occasions in April and June 2012. *See* Ashton's Brief (docket number 10) at 20. Ashton implies that because the ALJ incorrectly stated the number of times Dr. Piburn saw her between January 2012 and March 2013, the ALJ's consideration of Dr. Piburn's opinions is flawed. In response to Ashton, the Commissioner asserts that the ALJ found Dr. Piburn's opinion was entitled to minimal weight because "Dr. Piburn rarely saw [Ashton] during the time since he completed his January 2012 opinion. While the ALJ only mentioned two of the four times that [Ashton] had seen Dr. Piburn during the fourteen months between January 2012 and March 2013,

(continued...)

> Additionally, Dr. Piburn indicated in the form that [Ashton]
> had anhedonia and blunted affect. However, his clinical notes
> do not indicate he observed those symptoms or conditions.

(Administrative Record at 19.) The ALJ further supported his rejection of Dr. Piburn's opinions as follows:

> Therapy notes from Black Hawk-Grundy Mental Health
> Center, Inc., from early 2013, show the exact opposite of
> statements Dr. Piburn indicated in 2013. [Ashton] reported
> that she had felt only a "little off" after she stopped taking
> medications. She was going to pay off her fines so she could
> get her driver's license back. She had been staying awake
> after her child went to school. Notes stated [she] had good
> response to interventions and fair progress. [Ashton] only
> experienced some anxiety and increase in psychosocial
> pressures.

(Administrative Record at 19.)

As with the opinions of Dr. Zdilar, the Court finds, having reviewed the entire record, that the ALJ properly considered and addressed the opinion evidence provided by Dr. Piburn. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Piburn's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

---

[13](...continued)
this does not disturb the ALJ's conclusion that Dr. Piburn's March 2013 opinion was primarily based on only a few appointments with [Ashton]." Commissioner's Brief (docket number 11) at 21-22. The Court agrees with the Commissioner, and finds that the ALJ's incorrect counting of two instead of four visits between Ashton and Dr. Piburn during the time period of January 2012 to March 2013, is harmless error. *See Van Vickle v. Astrue*, 539 F.3d 825, 830-831 (8th Cir. 2008) (providing that if there is no indication that the ALJ would have decided a case differently, then a minor clerical error is harmless).

## 2. *Credibility Determination*

Ashton argues that the ALJ failed to properly evaluate her subjective allegations of disability. Ashton maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Ashton's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski

factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ noted that:

> The credibility of [Ashton's] statements with respect to subjective complaints and limitations has been carefully evaluated through the use of the appropriate factors found in Social Security Regulations 20 CFR 404.1529 and 416.929, which factors are consistent with those found in the court case of <u>Polaski</u> v. <u>Heckler</u>, 751 F.2d 943, 948 (8th Cir. 1984).

(Administrative Record at 15.) In considering Ashton's credibility, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that [Ashton's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ashton's] statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Administrative Record at 17.) In support of his conclusion, the ALJ thoroughly addressed the *Polaski* factors and found that: (1) Ashton's activities of daily living were inconsistent with her allegations of disability;[14] (2) her treatment history and medical records were inconsistent with her allegations of disability;[15] and (3) she had good response to medication and counseling.[16]

It is clear from the ALJ's decision that he thoroughly considered and discussed Ashton's treatment history, medical history, functional restrictions, effectiveness of medications and other treatment, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Ashton's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Ashton's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ

---

[14] *See* Administrative Record at 16 (pointing out inconsistencies between Ashton's activities of daily living and her allegations of disability).

[15] *Id.* at 17-19 (providing thorough discussion of the inconsistencies between Ashton's medical treatment and her allegations of disability).

[16] *Id.* at 17, 19 (providing discussion of Ashton's good response to medication and counseling).

because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Hypothetical Question

Ashton argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Ashton also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Ashton maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Ashton's testimony in determining Ashton's impairments.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as

---

[17] *See* Administrative Record at 16-19.

a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## VI. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Zdilar and Dr. Piburn. The ALJ also properly determined Ashton's credibility with regard to her subjective complaints of disability. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this  25th  day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA